**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

March 27, 2020

**By ECF**

The Honorable Danny Chin
United States Circuit Judge
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

   Re: ***United States v. Chen Teng*, 03 CR 567 (DC)**

Dear Judge Chin,

   I write on behalf of Mr. Teng Chen, a hardworking, law-abiding family man who, 16 years ago, plead guilty to five federal felonies. Counts One, Two, Three, and Five of the above-captioned indictment charged him with conspiracy to commit robbery pursuant to Title 18 U.S.C. § 1951. Count Four charged him with brandishing a firearm in connection with a Hobbs Act conspiracy to commit murder pursuant to Title 18 U.S.C. §924(c)(1)(A)(ii), a Class A felony. For that and other offenses, Mr. Chen was sentenced to serve 192 months of imprisonment followed by 5 years of supervised release. As the Government concedes, Count Four was invalidated by the United States Supreme Court's decision in *United States v. Davis*, 588 U.S. __ (2019).

   Mr. Chen has served the carceral component of the 192-month sentence. He commenced his term of supervision upon release from custody on June 30, 2017. *See* Ex. A, *Bureau of Prisons Inmate Locator website page for Mr. Chen*.

   I.   **Background**

      A.  **Offense Conduct and Sentencing**

   As a young man, Mr. Chen participated in several armed robberies for which he was indicted in the Southern District of New York. In 2002, Mr. Chen and others robbed two illegal businesses and one home in New York State. During two of these robberies, they were armed. During one, Mr. Chen shot a woman who ultimately survived. In 2003, Mr.

1

Chen and another man robbed a home in Atlanta, Georgia; they were armed. Following his arrest in 2003, Mr. Chen entered a guilty plea in February 2004. On October 4, 2004, the Court sentenced Mr. Chen to 192 months of imprisonment, the upper end of the then-mandatory United States Sentencing Guidelines range of 171 to 192 months. 84 of these months were imposed for Count Four. The Court also imposed five years of supervised release, the maximum length for a Class A felony under 18 U.S.C. § 3583.

### B. The *Davis* Decision

Following the Supreme Court's decision in *United States v. Davis*, in which the "crime of violence" enhancement in under 18 U.S.C. 924(c)(3)(B) (the residual clause) was held unconstitutionally vague, the Second Circuit granted Mr. Chen leave to file a motion pursuant to Title 28 U.S.C. § 2255. The Government concedes that, pursuant to *Davis*, Count Four is not a crime of violence under the now unconstitutional residual clause. With Count Four vacated, the applicable advisory guideline range would be reduced to 87 to 108 months.

The Government asks the Court to vacate Mr. Chen's sentence on Count Four, but asks that the Court resentence Mr. Chen to the same 192-month carceral term that he already completed. This would require a dramatic upward departure from the applicable advisory guidelines range. But, irrespective of whether the Court imposes a sentence of 192 months or a sentence within the now-applicable advisory guideline range, Mr. Chen will have already served out that punishment.

Thus, the sole meaningful issue is the length of supervised release the Court should impose. Count Four constituted the only Class A felony of which Mr. Chen was convicted. Upon its *vacatur*, a five-year term of supervised release will no longer be authorized. Rather, the maximum applicable term of supervised release will be three years. Mr. Chen has now been on supervised release for well over two years, and a three-year term will expire this June.

Mr. Chen's supervision has been successful. His lawful reentry to our community, his steady employment, and his reintegration into his supportive family all show that the goals of supervision have already been met. In the unique circumstances of Mr. Chen's case, early termination of supervision is warranted and in the interest of justice.

## II. Reconsideration of Mr. Chen's Supervise Release
### A. Applicable Law

Accounting for the 84 months Mr. Chen served for Count Four should be more than an academic exercise. The Supreme Court has held that such circumstances present "equitable considerations of great weight" that courts can address through modification or termination of supervised release. *United States v. Johnson*, 529 U.S. 53, 60 (2000). Having successfully completed nearly three years of supervised release, Mr. Chen now requests relief through the termination of his supervised release pursuant to 18 U.S. § 3583(e)(1).

Title 18 U.S. § 3583(e)(1) calls for the consideration of all sentencing factors other than 18 U.S. § 3553 (a)(2)(A) ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 18 U.S. § 3553 (a)(3) (types of sentences available). The statute grants courts great discretion, allowing them to terminate supervised release if they are "satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S. § 3583(e)(1).

### B. <u>Mr. Chen's Life Today</u>

Mr. Chen has been severely punished, and today, his life is drastically changed. He is deeply remorseful for his misconduct, and mindful of the harms he caused. The long years of his incarceration disrupted his family and isolated him from much of his son's childhood. Mr. Chen is grateful to have come home to an intact family, and his life's ambition is to provide for and support them.

As the Government notes in its January 8 letter, the Court in *Johnson* cites to the Senate in describing the role of supervised release: to "ease [a] defendant's transition into the community" after a long prison term and to "provide rehabilitation" through supervision and training after a short prison term. *Johnson* 529 U.S. at 59 (citing S.Rep. No. 98–225, p. 124 (1983)). Mr. Chen's successful term of supervision and lawful reintegration into the community demonstrate that the goals of supervision have been met.

Mr. Chen has flawlessly complied with the terms of his supervision. His probation officers, of which he has had multiple, have not deemed him in need of any specialized coursework or programming. The regular visits to his home, which occur three to four times a month, have been uneventful. He has never tested positive for drug use. In looking for work, Mr. Chen did not require the assistance of the Probation Department. Rather, he took personal initiative and found a position for himself. In every way, Mr. Chen has been a model probationer.

Mr. Chen has endeavored to create a harmonious family life. He lives in Brooklyn with his wife, his sister-in-law, and his niece, a 21-year-old college student. Mr. Chen is particularly grateful to his wife, Jin Jiang, who remained supportive of him through his lengthy incarceration. Mr. Chen feels that leading a lawful, responsible life is the minimum he can do to try and repay his family for their support. Mr. Chen is devoted to his family and "it is important to him that [they] have a harmonious home. *See* Ex. B, *letter of support from Jin Jiang.* One of the greatest hardships that attended Mr. Chen's sentence was to miss his son's childhood and teenage years. Mr. Chen has worked hard to rebuild a relationship with his now-20-year-old son and is a committed parent. His son is currently in the military, and Mr. Chen regularly communicates him to provide comfort and support. *See* Ex. B. More than anyone, Mr. Chen understands the grave significance of establishing trust with his son, and refuses to jeopardize that relationship.

Mr. Chen is the primary breadwinner in his household. He works in a shipping and mailing store, and is employer considers him an "excellent employee" who is diligent and helpful. *See* Ex. C, *Letter of Mr. Sunny Wang*. Mr. Chen's employer also considers him to be "a gentle, warm-hearted, pleasant man who is often smiling" and who is personable to both children and adults. *Id.*

While Jin Jiang worked in a restaurant for many years, her health has declined and she is no longer able to do that work. The repetitive stress of the labor has caused persistent numbness in her arms. After having been absent for so long, Mr. Chen now acutely feels the importance of supporting the woman he loves, who would struggle to remain stable without his help. His wife recently returned to part time work as a cashier, causing her health issues to flare. *See* Ex. B. Mr. Chen does whatever he can to ease his wife's pain, including massaging and applying ointment to her arms and regularly checking up on her. *See* Ex. B. His earnings help support his sister-in-law and niece as well; he is happy to see his niece completing college and hopeful for the opportunities this will give her in the future.

Today, Mr. Chen is not a man who poses any threat to the public. Terminating his supervision now will not signal that the crimes he committed twenty years ago went unpunished. To any observer, it is clear that Mr. Chen paid dearly for his misconduct. But Mr. Chen's successful supervision demonstrates that the goals of punishment and supervision have been met.

**Conclusion**

Mr. Chen has successfully worked to create a new life for himself and his family. He has maintained an unblemished record following his release and has found stability and connection. The time that he served, and almost complete period of supervised release that he has complied with, have been more than adequate methods of serving the goals of sentencing. Accordingly, we respectfully request that the Court impose a sentence within the now-applicable advisory guideline range, and impose no further supervised release.

> Respectfully submitted,
> /s/
> Christopher Flood
> Federal Defenders of New York
> *Counsel for Mr. Teng Chen*

4